IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DERONTE D. PURNELL, | § | |
| | § | No. 48, 2014 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in |
| v. | § | and for Sussex County |
| | § | |
| STATE OF DELAWARE, | § | ID No. 1107017850 |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: September 10, 2014
Decided: September 12, 2014

Before **STRINE**, Chief Justice, **HOLLAND** and **RIDGELY**, Justices.

**O R D E R**

On this 12th day of September 2014, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:

(1) The defendant-below/appellant Deronte D. Purnell, pled guilty to robbery first degree, possession of a firearm by a person prohibited, and possession of a deadly weapon during the commission of a felony. Purnell appeals from the Superior Court's denial of his motion for postconviction relief under Superior Court Criminal Rule 61. Purnell argues that he received ineffective assistance of counsel and claims that the plea agreement was altered after he signed it. We find no merit to Purnell's appeal and affirm the Superior Court's judgment.

(2) The record reflects that on the morning of July 19, 2011, a man walked into the Dagsboro Royal Farms in Sussex County and asked for a pack of cigarettes. After the

store clerk, Jessica Donovan, put the cigarettes on the counter, the man left the store, but he returned holding a steak knife and demanded money from the register. Donovan gave the man $170 from the register. The robbery was recorded on the store's video surveillance system. Donovan identified Purnell as the perpetrator of the robbery from a photo-lineup.

(3) Purnell turned himself in later that day. After Purnell was arrested and given *Miranda* warnings, he confessed to the crime, saying, "I did this; I need help." Purnell had two meetings with the Office of the Office of the Public Defender to prepare for his preliminary hearing.[1] Purnell also had three meetings with the Public Defender who was assigned to handle his case, once by video phone and twice at the courthouse in person for case reviews.[2] Purnell admitted the charges and said he wanted a resolution to the case that included a treatment program for drugs and alcohol.[3] Purnell also wrote a letter to the Prosecutor on December 22, 2011, expressing his willingness to agree to a plea

---

[1] On July 22, 2011, Purnell had his initial intake interview with the Office of the Public Defender. Appendix to Purnell's Opening Brief at A36. On July 28, 2011, Purnell met with an attorney from the Office of the Public Defender who was assigned to handle his preliminary hearing. Purnell decided to waive his right to a preliminary hearing, and the attorney noted that Purnell wanted his case "resolved as soon as possible" and "really wants and feels he needs a drug treatment program." *Id.*

[2] The meeting by video phone occurred on either November 25, 2011 or November 29, 2011. *Compare* Appendix to Purnell's Opening Brief at A36 ¶ 8, *with* A37 ¶ 11. The meetings at the courthouse occurred on December 5, 2011 for the first case review and January 3, 2012 for the second case review. Appendix to Purnell's Opening Brief at A38. On January 13, 2012, Purnell also met with a Psycho-Forensic evaluator to investigate his substance abuse issue and determine appropriate treatment recommendations. Appendix to Purnell's Opening Brief at A37 ¶ 10.

[3] Appendix to Purnell's Opening Brief at A36-37.

bargain that included a treatment program. In the letter, Purnell said that he understood that he had to accept responsibility and be held accountable for his actions.[4]

(4) On February 22, 2012, at the final case review, Purnell decided to accept a plea bargain. Before accepting the guilty plea, the Superior Court held a colloquy with Purnell to ensure that he understood the charges and was making the guilty plea voluntarily.[5] Purnell confirmed that he had enough time to go over the case with his lawyer and that he was satisfied with his representation. Purnell also confirmed that he had read and signed the Truth-in-Sentencing form and that it was accurate. The Superior Court told Purnell that there would be a presentence investigation, and Purnell said that he understood that he could receive a sentence of between 7 and 53 years. The Superior Court determined that Purnell was making a voluntary, knowing, and intelligent decision.

(5) At the sentencing hearing on April 27, 2012, Purnell apologized for the crime, requested a treatment program as part of his sentence, and said, "I know I got to be accountable for my actions right now."[6] The Superior Court sentenced Purnell to 33 years at Level V, suspended after 20 years for decreasing levels of supervision. Purnell did not file a direct appeal with this Court. Instead, on July 20, 2012, Purnell moved for a reduction of his sentence, which the Superior Court denied on August 28, 2012.[7]

(6) On April 22, 2013, Purnell filed his motion for postconviction relief. Purnell alleged that he had received ineffective assistance of counsel. For the first time, Purnell

---

[4] Appendix to Purnell's Opening Brief at A45.
[5] Appendix to the State's Answering Brief at B4-10.
[6] Appendix to the State's Answering Brief at B19, B21.
[7] Appendix to Purnell's Opening Brief at A28.

3

claimed that Donovan — the clerk at the Royal Farms he pled guilty to robbing — was a drug addict, that he was Donovan's drug dealer, and that Donovan agreed to set up a staged theft to settle a debt she owed him.[8]  Purnell argued that because Donovan was actually a co-conspirator who was only pretending to have been compelled to turn over the money by Purnell's threatened use of force, he did not commit a robbery, but rather only misdemeanor theft.  Purnell said that his counsel failed to present a defense of actual innocence because counsel did not meet with him in person at the prison, did not review the surveillance tapes of the robbery, and did not investigate the case adequately.  Purnell argued that Public Defenders in Delaware are so overworked that they are ineffective.  Purnell also alleged that the plea agreement had been altered after he signed it, that he thought he would receive a shorter sentence, and that he did not agree to a presentence investigation.

(7)  The Superior Court denied Purnell's motion on January 27, 2014.  The Superior Court said that Purnell "does not offer any evidence that defense counsel ever was told about allegations [that] the clerk was in on the robbery. . . .  Therefore, defense counsel cannot be ineffective for failing to develop this *unique* defense."[9]  Furthermore, the Superior Court said that "[t]he fact that, while at the prison, communications with the Defendant were conducted only through correspondence and video conference is not evidence of ineffectiveness of counsel, especially in light of the multiple meetings the

---

[8] Appendix to Purnell's Opening Brief at A25, A32.
[9] *State v. Purnell*, 2014 WL 595907, at *4 (Del. Super. Jan. 27, 2014) (emphasis in original).

4

Defendant had with defense counsel in the courthouse."[10] The Superior Court said that "[t]here is no evidence that defense counsel's workload caused him to be ineffective" and found that Purnell received effective representation by his defense attorney and the Public Defender's Office.[11] The Superior Court also determined that the plea agreement had not been altered after Purnell signed it, and noted that a "comprehensive" colloquy took place before Purnell's guilty plea was entered.[12]

(8) This Court reviews the Superior Court's denial of a Rule 61 motion for postconviction relief for abuse of discretion.[13] Constitutional questions are reviewed *de novo*.[14] To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the familiar two-part test of *Strickland v. Washington*.[15] "In the context of a guilty plea challenge, *Strickland* requires a defendant to show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's actions were so prejudicial that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial."[16]

(9) The Superior Court did not err by finding that the conduct of Purnell's counsel did not fall below an objective standard of reasonableness. The Superior Court's decision is well supported by the record for a simple reason: the record is devoid of any indication

---

[10] *Id.*

[11] *Id.* at *5.

[12] *Id.* at *4.

[13] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013) (citing *Swan v. State*, 28 A.3d 362, 382 (Del. 2011)).

[14] *Id.*

[15] 466 U.S. 668, 687 (1984).

[16] *Somerville v. State*, 703 A.2d 629, 631 (1997) (internal quotation marks omitted) (citing *Albury v. State*, 551 A.2d 53 (1988)).

that Purnell ever told his counsel that what took place at the Royal Farms was the result of a conspiracy between himself and Donovan and therefore not an actual armed robbery. As the Superior Court found, Purnell admits that he met with his counsel on several occasions before his guilty plea was entered. Whether these meetings were by video phone, as some meetings were, or in person at the courthouse, as others were, Purnell had many chances to articulate this theory and to explore with counsel the opportunity it presented to have the charges against him reduced to something less. But Purnell does not contend that he did so, and thus it cannot be the fault of his counsel that this unusual defense — that Purnell committed crimes, but of an arguably less serious nature — was not pursued.

(10) In fact, the record indicates that Purnell admitted to his guilt from early on, sought to attribute his conduct to a substance abuse problem for which he requested treatment, and expressed a desire to take responsibility for his actions. The record also reflects that the Superior Court engaged in an extensive colloquy with Purnell before the entry of his plea, confirmed that Purnell was satisfied with his representation, and verified that what was written on the plea agreement was accurate. Purnell's voluntary guilty plea constitutes a waiver of any alleged errors occurring before the entry of the plea.[17] Absent clear and convincing evidence to the contrary, Purnell is bound by the

---

[17] *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2004) (citing *Downer v. State*, 543 A.2d 209, 312-13 (Del. 1988)).

6

answers on the Truth-in-Sentencing form and his sworn statements to the judge during the guilty plea colloquy.[18]

(11) For these reasons, we find no error in the Superior Court's denial of Purnell's motion for post conviction relief.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:
*/s/ Leo E. Strine, Jr.*
Chief Justice

---

[18] *Somerville v. State*, 703 A.2d 629, 632 (1997).